# UNITED STATES DISTRICT COURT

# WESTERNN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| ABIGAIL M. BROWN, individually and on behalf of all other similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | Case No. <<>> |
| | ) | Hon. <<>> |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |
| | ) | |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff ABIGAIL M. BROWN ("Plaintiff") through the undersigned attorneys, upon personal knowledge as to her own acts and status, and upon information and belief based upon the investigation of counsel as to the remaining allegations, brings this action on behalf of herself and all others similarly situated against State Farm Mutual Automobile Insurance Company ("State Farm"), Plaintiff alleges as follows:

1

# I. INTRODUCTION

1.     This is a class action brought by Plaintiff on behalf of all individuals (the Class) who received allowable expenses in the form of family provided/non-agency provided attendant care benefits under Mich. Comp. Laws §500.3101, *et seq.*, the Michigan Automobile No-Fault Insurance Act (the No-Fault Act), from Defendants STATE FARM during the class period.

2.     The No-Fault Act, subsection 3107(1)(a) provides that an injured person is entitled to recover what are known as "allowable expenses" consisting of "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation."

3.     Court decisions have made it clear that in-home attendant care rendered by family, friends, and neighbors of the injured person are compensable allowable expenses under the No-Fault Act. This No-Fault benefit lets injured accident victims hire outside help or employ family members, so that the injured person can remain in the home environment rather than be institutionalized.

4.     Regarding the reasonableness of the charges, several court decisions held that it is appropriate to consider commercial rates charged by professional agencies for similar services. The Michigan Court of Appeals said: "[C]omparison to rates charged by institutions provides a valid method for determining whether the amount of an expense was reasonable and for placing a value on comparable services

performed [by family members]." *Sharp v. Preferred Risk Mut Ins. Co*., 142 Mich. App. 499, 514, 370 N.W.2d 619 (1985) (quoting *Manley v. Detroit Auto. Inter-Ins. Exchange*, 127 Mich. App. 444, 339 N.W.2d 205 (1983)).

5.    This case only involves the reasonable value of family provided/non-agency provided attendant care benefits. There is no issue as to whether the care was reasonably necessary or related to the motor vehicle accident; whether the charge was actually incurred, adequately supported or timely filed; nor any other common defense to a No-Fault claim. To be sure, the Defendant no-fault insurers have (1) *approved* all the no-fault claims for attendant care benefits, (2) *for all class members*, (3) for the entirety of the class period, and (4) Defendants have *issued payment* on the claims, albeit at an improper and unreasonably low rate.

6.    This is not a No-Fault case where any of the common individual and unique defenses exist – such as whether the injury occurred through the use of a motor vehicle as a motor vehicle, whether the individual was injured, or whether the bill was reasonable or necessary. There are *no policy defenses* for *any class members.*

7.    Defendant engaged in a systematic underpayment of family provided/non-agency provided attendant care benefits ("Benefits") by failing to include a premium for overtime, that is time-and-a-half for hours over 40 in a week.

8.    Defendant's actions represent a common policy, course of action, and conduct; it was uniformly applied to all class members; it violated the No-Fault Act

and amounts to a breach of contract for the same reasons; and caused all class members the same injury – underpayment of Benefits.

9.    For the reasons set forth herein, Plaintiff challenges the practice and policy of calculating the reasonable rate paid to Plaintiff and other class members' claims for family provided attendant care Benefits for failing to include overtime premium pay for those care hours in excess of 40 hours in a week.

## II. PARTIES

### A.    PLAINTIFF

10.    Plaintiff ABIGAIL M. BROWN, a resident and citizen of Kent County Michigan and is providing attendant care benefits to her husband,  Larry R. Brown, Jr.

11.    Larry R. Brown, Jr. was injured in an automobile accident and his PIP claim, No. 22-27H8-98, was adjusted and paid by STATE FARM.

12.    Larry R. Brown, Jr. was prescribed attendant care that exceeds 40 hours per week, and Plaintiff provided her husband's attendant care, at over 40 hours per week.

13.    Defendant STATE FARM has reviewed, approved, and paid the subject attendant care claim, but only at a straight-time hourly rate including for care hours over 40 in a week.

4

14.    Upon information and belief, attendant care benefits were calculated using Defendants' process and policies, which caused the underpayment by not including premium pay for overtime hours.

### B.    DEFENDANT

12.    Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("STATE FARM") is a reciprocal insurance exchange and thus an unincorporated association. Its primary address is One State Farm Plaza, Bloomington, Illinois 61710.

13.    At all material times STATE FARM Defendant was authorized to do business in the State of Michigan.

14.    Defendant State Farm creates and enforces the claims handling guidelines for STATE FARM. Defendant State Farm trains, manages, and directs all STATE FARM adjusters, claims handlers, and claims supervisors-including those who adjust claims for policies underwritten by specific STATE FARM subsidiary companies.

### III. JURISDICTION AND VENUE

15.    The Court has subject matter jurisdiction over Plaintiff's class claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the combined claims of the proposed class members exceed $5,000,000 and because Defendants are citizens of different states than Plaintiffs, and there are at least one

hundred members of the putative class. Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated. 28 U.S.C. § 1332(d)(6).

16.    Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and (2) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

17.    All conditions precedent to this action have occurred, been performed, or have been waived.

### IV. FACTUAL ALLEGATIONS

18.    During the relevant period, members of the Class (defined below) throughout the United States received Michigan No-Fault PIP benefits in the form of attendant care payments from STATE FARM.

19.    Each class member shares certain common facts, including for example: (1) they are or were receiving Michigan No-Fault PIP benefits from STATE FARM under a Michigan No-Fault automobile insurance policy or otherwise under the law during the class period; (2) at all relevant times, STATE FARM was required to comply with the Act and controlling case law as the insurer responsible for the PIP claims; and (3) STATE FARM's  policies, procedures, and

6

practices were deficient for purposes of calculating and paying class member Benefits, all without disclosure to class members.

20.    Plaintiff and members of the Class suffered an injury in fact caused by the improper no-fault benefit claims handling and payments as set forth in this Complaint.

### A.    BACKGROUND OF THE MICHIGAN AUTOMOBILE NO-FAULT INSURANCE ACT, MICH. COMP. LAWS § 500.3101, ET SEQ.

21.    Michigan adopted the No-Fault Act with a goal "to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Attorney General*, 402 Mich. 554, 267 N.W.2d 72 (1978).

22.    "The Legislature believed that its goal of providing victims of motor vehicle accidents with 'assured, adequate, and prompt reparation for certain economic losses' could be best achieved through a 'system of compulsory insurance.'" *Andary v. USAA Cas. Ins. Co*., 512 Mich. 207, 216, 1 N.W.3d 186 (2023) (quoting *Shavers*, 402 Mich. 554, 578-79, 267 N.W.2d 72 (1978)).

23.    The No-Fault Act is remedial in nature and is to be liberally construed in favor of those it intends to benefit: the accident victims. *Burke v. Warren*, 105 Mich. App. 556, 307 N.W.2d 89 (1981).

24.    The principal section of the No-Fault Act establishing benefits available to an injured person is Mich. Comp. Laws § 500.3107 requiring insurers

to pay for "Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."

25.    Medical and rehabilitation expenses have always been at the core of the No-Fault System. The early goal of the No-Fault System was "compensation of injured persons, adequately, promptly, and without regard to fault for medical expenses, wage loss and rehabilitation expenses."[1]

26.    Attendant care benefits are allowable expenses under Mich. Comp. Laws § 500.3107 and are recoverable even when provided by an injured person's family members. *Van Marter v. American Fidelity Fire Ins. Co.*, 114 Mich. App. 171, 318 N.W.2d 679 (1982).

27.    Under the No-Fault Act, an insurance company is responsible to compensate family members and friends who provide attendant care services "to the same extent as they would be if the services had been rendered by someone other than" the family member or friend. *Van Marter*, 114 Mich. App. at 178-79, 318 N.W.2d at 683. To do otherwise would "penalize both the injured insured and his family for providing care which would otherwise be performed by a less

---

[1] No Fault Insurance After Three Years, A Report to the Governor, Insurance Bureau of Michigan Department of Commerce, October 6, 1976.

personalized health care industry." *Van Marter*, 114 Mich. App. at 181, 318 N.W.2d at 683.

28.    Under the Act, an insurance company must pay a family member a reasonable amount for nursing services rendered at home. *Manley v. Detroit Auto. Inter Ins. Exchange*, 425 Mich. 140, 388 N.W.2d 216 (1986).

29.    Attendant care expenses are presumed to be provided at their reasonable market value. *Manley,* 127 Mich. App. 444, 339 N.W.2d 205 (1986). "The relevancy of agency rates in determining a reasonable rate for home care has long been implied in Michigan jurisprudence." *Hardrick v. Auto Club Ins. Ass'n*, 294 Mich. App. 651, 701, 819 N.W.2d 28, 55 (2011).

30.    To establish a right to payment, the claimant must present the insurance company with "reasonable proof of the fact and the amount of loss sustained." Mich. Comp. Laws § 500.3142. The No-Fault Act "requires only reasonable proof of loss, not exact proof." *Williams v. AAA Mich.*, 250 Mich. App. 249, 267, 646 N.W.2d 476, 485 (2002).

31.    When reasonable proof of the loss and the amount of the claimed benefit has been received, the insurance company has a duty to investigate on its own if it wishes to challenge the amount of benefits owed. *Id*.

### B. DEFENDANT IMPROPERLY PAID FAMILY PROVIDED/NON-AGENCY PROVIDED ATTENDANT CARE AT ARTIFICIALLY LOW RATES

32.     Defendant failed to comply with its obligation to properly evaluate and pay Benefits under the No-Fault Act.

33.     Defendant engaged in a systematic policy to ignore the proper valuation of family provided/non-agency provided attendant care benefits.

34.     Defendant engaged in a systematic policy to ignore the proper valuation of family provided/non-agency provided attendant care benefits by failing to consider the value of overtime as part of its obligation to "pay a 'reasonable charge' for attendant care services" as directed by the Michigan Legislature. *See, Hardrick, supra*, and *Bronson Methodist Hosp v. Home-Owners Ins Co*, 295 Mich. App. 431, 814 N.W.2d 670 (2012).

35.     Defendant engaged in this policy and procedure by failing to pay overtime for care providers who provided services in excess of 40 hours per week in a systematic and uniform manner, on all class members, in the same manner and for the same reasons.

36.     The effects of Defendant's wrongful and systematic conduct were experienced by all class members, and it caused the same injury – the underpayment of Benefits otherwise admittedly owed by the No-Fault Insurer Defendant.

37.    Therefore, a class-wide remedy is appropriate, including requiring Defendant to permit, or the Court to directly order, the No-Fault Insurer Defendant to pay overtime.

### V. CLASS ACTION ALLEGATIONS

38.    Rule 23(a) ensures that the named Plaintiff is an appropriate representative of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—"effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting *General Telephone Co. of Northwest v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)).

39.    Plaintiff brings this action individually and as representative of all similarly situated PIP benefit recipients, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Class:

**All individuals who received family provided attendant care benefit payments from Defendant during the Class Period.[2]**

Excluded from the above-defined Classes are Defendant and their affiliates, parents, subsidiaries, employees, officers, agents, and directors; any judicial officers

---

[2] Both the injured person and the care provider qualify as class members under no fault law. But damages will only be counted for the care hours provided, and not doubled or otherwise inflated to a double recovery.

11

presiding over this matter and the members of their immediate families and judicial staffs. Also excluded are individuals who received attendant care from commercial agencies or providers (that is by non-family members or friends), or for whom an attorney negotiated their rate.

40.    Plaintiff reserves the right to modify or amend the definitions of the proposed classes before the Court determines whether certification is appropriate.

41.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** This test "limit[s] the class claims to those fairly encompassed by the named plaintiffs' claims." *In re American Med. Sys., Inc*., 75 F.3d 1069, 1082 (6th Cir.1996) (citation and quotation omitted). The named class representative meets the criteria for typicality.

42.    Typicality does not mean the same claims or facts. *Senter v. General Motors Corp*., 532 F.2d 511, 525 n. 31 (6th Cir. 1976), cert. denied, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976): "[t]o be typical a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." 75 F.3d at 1078.

43.    All class members' and the class representative's claims for family provided attendant care were properly filed and accepted as such by No-fault Insurer Defendant, and they were approved and paid by Defendant.

44.    Here, typicality requires a class representative with family provided attendant care benefit claims that were approved and paid by Defendant using rates calculated by using straight time wages only. Furthermore, Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all class members were comparably injured through Defendant's uniform misconduct described above.

45.    To be sure, there are no defenses available to Defendant that are unique to individual plaintiffs, such as problems with claims being submitted, inadequate proof of injury or care, denied claims, etc. All class members', and the class representative's, claims for non-agency provided attendant care were properly filed and accepted as such by Defendant, and they were approved and paid by Defendant. The only disputes involve the hourly rate used by Defendant.

46.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

47.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, class members number in the tens of thousands. The precise number of class members and their addresses are presently

unknown to Plaintiff, but may be reasonably ascertained from Defendant's records and files, and likely number in the thousands. Similarly, class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

48.    **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** Cases involving statutes and contracts are particularly well-suited for class treatment because the class members face the same common questions of fact and law. *Mich Ass'n of Chiropractors v. Blue Cross Blue Shield of Mich*., 300 Mich. App. 551, 834 N.W.2d 148 (2013); *Thompson v. Cmty. Ins. Co.*, 213 F.R.D. 284, 292 (S.D. Ohio 2002) (citing *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D. Ga. 1983) ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such."); *Peters v. Cars to Go, Inc*., 184 F.R.D. 270 (W.D.Mich.1998).

49.    No-fault Insurer Defendant utilizes a form insurance contract. Furthermore, as required in Michigan, all no-fault insurance contracts must comply with the Michigan No-Fault statute. Thus, Defendant's legal obligations to its insureds under the No-Fault Act and its insurance contract are identical for all class members.

14

50. No-fault Insurer Defendant utilizes standard attendant care PIP claim adjustment processes and rules, making it easy for Plaintiff to meet the test for commonality and typicality. *Powers v. Hamilton Cty. Pub. Def. Comm'n.*, 501 F. 3d. 592 (6th Cir. 2007).

51. Upon information and belief Defendant, like all auto insurance companies, uses a standardized process for adjusting PIP claims.

52. The standardized process was designed to ensure consistent results by Defendant's adjusters when adjusting PIP claims and adherence to the no-fault law.

53. The standardized process governed No-fault Insurer Defendant adjusters' work relative to adjusting family provided attendant care benefits for all class members, including how to pay family provided attendant care rates as required by the Michigan No-Fault Act.

54. Predominance is a question of efficiency. See *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615–16, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); Committee Notes to 1966 Amendment to Fed. R. Civ. P. 23; William B. Rubenstein, 2 *Newberg on Class Actions* § 4:49 (5th ed. 2012). The predominance inquiry asks "Is it more efficient, in terms both of economy of judicial resources and of the expense of litigation to the parties, to decide some issues on a class basis or all issues in separate trials." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir.

2012), cert. granted, judgment vacated, 569 U.S. 1015 (2013), and judgment reinstated, 727 F.3d 796 (7th Cir. 2013).

55.    A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defective claims process to calculate Benefits for thousands of insureds or caregivers, yet not a cost to any one of them large enough to justify the expense of an individual suit.

56.    Common questions of law and fact existing as to all class members predominate over questions affecting only individual class members. Such common questions of law or fact include:

     a.    Whether Defendant's policies and procedures for adjusting family provided/non-agency provided attendant care claims amounted to a violation of the Michigan No-Fault Act or case law;

     b.    Whether Defendant's policies and procedures for adjusting family provided/non-agency provided attendant care claims amounted to a breach of contract;

     c.    Whether Defendant's management improperly withheld or otherwise suppressed the proper methodology for adjusting family provided/non-agency provided attendant care claims;

     d.    If Defendant's policies and procedures for adjusting family provided/non-agency provided attendant care claims caused harm to class members, and what remedy is required;

     e.    Whether an injunction is warranted;

     f.    Calculating the dollar value of the unpaid benefits and whether the value is susceptible to a class-wide modeling;

16

g.    Whether interest should be awarded to class members under federal standards;

h.    Whether Defendant is liable for damages, and if so, the amounts of such damages; and

i.    Whether Plaintiff and the class members are entitled to any other remedy or relief, including an award of attorneys' fees and 12% interest under the No-Fault Act.

57.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other class members. Similar or identical violations, business practices, and injuries are involved, and insurance policy rights – especially those involving PIP benefits under Michigan's No-Fault Act – involve uniform, objective questions of law and fact, both for the prosecution and for the defense. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action. Thus, the elements of commonality and predominance are both met.

58.    For the named Plaintiff, and absent class members, the witnesses, contracts, documents, agency rates, and the payment of family provided attendant care benefits for class members during the class period will all include the same evidence. Thus, the elements of commonality and predominance are both met.

59.    If Defendant prevails on the common question(s) at issue in this putative class action, they will be exonerated and insulated against all class

members who do not opt out from this action, thus demonstrating the predominance element – as a matter of efficiency – is met and certification is warranted.

60.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Typicality requires a class representative who is receiving non-agency provided attendant care benefits that were approved and paid by Defendant using rates calculated by using straight-time wages only. Plaintiff meets the criteria for typicality.

61.    Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all class members were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiff, such as problems with claims being submitted, inadequate proof of injury or care, denied claims, etc.

62.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the other class members she seeks to represent, she has retained counsel competent and experienced in complex class action litigation, and together they will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and her counsel, who are experienced class action lawyers.

63.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication

of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Plaintiff and the other members of the Classes are relatively small – several dollars per hour –compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for class members to individually seek redress for Defendant's wrongful conduct. Even if class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

64.    **Particular Issues – Federal Rule of Civil Procedure 23(c)(4).** In the event unforeseen issues preclude class certification under Fed. R. Civ. P. 23(b)(3), the case is still appropriate for class certification under Fed. R. Civ. P. 23(c)(4), as to the particular issues of liability.

65.    This reasoning is consistent with Sixth Circuit case law holding that "[n]o matter how individualized the issue of damages may be," determination of damages "may be reserved for individual treatment with the question of liability tried as a class action," *In re Whirlpool Corp. Front-Loading Washer Prod. Liab.*

*Litig.*, 722 F.3d 838, 854 (6th Cir. 2013) (citing *Sterling v. Velsicol Chem. Corp.*,

855 F.2d 1188, 1197 (6th Cir.1988)).

## VI. CLAIMS ALLEGED

## COUNT I - VIOLATIONS OF THE MICHIGAN NO FAULT AUTOMOBILE INSURANCE ACT BY STATE FARM

66.    Plaintiff incorporates the above paragraphs as if fully set forth herein.

67.    Plaintiff and class members have standing to pursue a cause of action

for violation of the Michigan No-Fault Act because Plaintiff and members of the

Class received PIP benefits under the Act from No-fault Insurer Defendant STATE

FARM; they suffered an injury-in-fact; and lost money as a result of STATE FARM

s' actions as set forth herein. Plaintiff is entitled to insurance under a policy of

insurance issued by these Defendant or otherwise entitled to automobile no-fault

insurance benefits through Defendant.

68.    Plaintiff class members provided attendant care to family members who

sustained personal injuries and incurred allowable expenses including attendant

care expenses.

69.    Plaintiff and class members complied fully with the terms of the

automobile insurance policies and/or the requirements of the No-Fault Act and the

STATE FARM Defendant has failed to properly pay allowable expenses consisting

of non-agency provided attendant care benefits due Plaintiffs and class members

under the Michigan No Fault Automobile Insurance Act, Mich. Comp. Laws §500.3101, *et seq*.

70.    Consequently, Plaintiff and class members seek all available damages and relief to which they are entitled under the Michigan No-Fault Act, including: underpaid or unpaid attendant care benefits and interest, and reasonable attorneys' fees and costs.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A.    Declaring that this action is a proper class action, certifying the Class requested herein, designating the respective Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel;

B.    Declaring the use of a straight hourly wage for care hours over 40 in a week to be in violation of the Michigan No-Fault Act and case law and ordering corrective measures to be taken, including but not limited to Defendants conducting a proper calculation of the PIP benefits owed to each class member using a legal benefit calculation method;

C.    Ordering Defendant to pay actual damages to Plaintiff and the other members of the Class;

D.   Ordering Defendant to pay statutory damages, as provided by the applicable Michigan statutes invoked above, to Plaintiff and Class Members;

E.   Ordering Defendant to pay restitution to Plaintiff and the other members of the Class;

F.   Ordering Defendant to pay attorneys' fees and litigation costs;

G.   Ordering Defendants to pay both statutory and pre- and post-judgment interest on any amounts awarded; and

H.   Ordering such other and further relief as may be just and proper.

Dated: November 26, 2024

Respectfully submitted,

SOMMERS SCHWARTZ, P.C.

/s/*Jason J. Thompson*
Jason J. Thompson (P47184)
One Towne Square, 17th Floor
Southfield, Michigan 48076
248.355.0300
jthompson@sommerspc.com

LISS & ANDREWS, P.C.

/s/*Nicholas S. Andrews*
Nicholas S. Andrews (P42693)
Liss & Andrews, P.C.
39400 Woodward Avenue, Suite 200
Bloomfield Hills, Michigan 48304
248.647.9700
nandrews@lissfirm.com

THE MILLER LAW FIRM, P.C.

/s/ *E. Powell Miller*
E. Powell Miller (P39487)

Dennis A. Lienhardt (P81118)
950 West University Drive, Suite 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com
dal@millerlawpc.com

GIROUX PAPPAS
TRIAL ATTORNEYS, P.C.

/s/ *Robert M. Giroux*
Robert M. Giroux
28588 Northwestern Highway
Suite 100
Southfield, MI 48034
(248) 531-8665
rgiroux@greatmiattorneys.com

*Attorneys for Plaintiff and the Putative Class*